**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **INTEGRITY DEVELOPMENT GROUP, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CITY OF COWETA, OKLAHOMA,**<br><br>**Defendant.** | **Case No. 25-CV-44-JFH-JAR** |

**ORDER AND OPINION**

Before the Court is the Report and Recommendation ("R&R") [Dkt. No. 61] of Magistrate Judge Jason A. Robertson, who recommends that Defendant City of Coweta's ("City") Motion for Summary Judgment [Dkt. No. 45] be granted and Plaintiff Integrity Development Group, LLC's ("Plaintiff") claims be dismissed without prejudice. Both parties timely and respectively objected to the R&R. *See* Dkt. Nos. 62-63. For the following reasons, the Court ADOPTS the R&R IN PART. Specifically, the Court agrees that the City's Motion for Summary Judgment should be GRANTED, but the Court finds Plaintiff's claims should be dismissed *with* prejudice.

**BACKGROUND**

Neither party objected to the Magistrate Judge's recitation of the undisputed material facts in this case, so the Court adopts that recitation here. *See* Dkt. No. 61 at 2-4. Plaintiff is a real estate development company who submitted a plan to the City to develop a 135-acre residential subdivision named "Wynstone." Wynstone was to be developed in four separate phases. This matter concerns the City's delay in approving Plaintiff's final plat application for Phase III.

Pursuant to a conversation between Plaintiff's third-party engineer and the City Planner, Plaintiff submitted Phase III's final plat application to the City on November 13, 2023, so the City's Planning Commission ("Commission") could recommend it for approval at its December

2023 meeting. But, the final plat was not scheduled for consideration at the Commission's December 2023 meeting. Instead, the subdivision infrastructure was inspected and approved in late December 2023, and the final plat application was placed on the January 2024 Commission meeting agenda. The January 2024 regular meeting was cancelled due to inclement weather, so the Commission convened a special meeting for the final plat application on January 22, 2024. There, the Commission voted to recommend approval of the Phase III final plat to the City Council ("Council") at the Council's February 5, 2024, meeting.

However, on February 2, 2024, the City received a letter from the Oklahoma Department of Environment Quality ("ODEQ") stating that Plaintiff had not corrected identified "violations" involving stormwater control at the Phase III subdivision. The City's Community Development Director advised the Council of ODEQ's letter and requested that Plaintiff's application be tabled until the issues could be resolved. The Council voted to table the final plat application. Plaintiff remedied the issues, and the Council approved the Phase III final plat on March 4, 2024.

Plaintiff ultimately sued the City on August 9, 2024, in Wagoner County District Court for lost revenue, additional loan interest, and wages and expenses incurred by the City's delay. *See* Dkt. No. 2-2. Plaintiff amended its state court petition and clarified that it sought such damages based on the City's violations of the Fourteenth Amendment's Due Process clause and Article II, Section 7 of the Oklahoma Constitution. Dkt. No. 2-12 at 4. The City removed this action [Dkt. No. 2], and ultimately moved for summary judgment on September 26, 2025. Dkt. No. 45.

**STANDARD**

After a Report and Recommendation has issued, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b). The Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected

to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*; *see also* 28 U.S.C. § 636(b)(1). An objection to a report and recommendation is properly raised if it is both timely and specific. *United States v. One Parcel of Real Property Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). An objection is sufficiently specific if it "enables the district judge to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute." *Id.* "In the absence of a proper objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate." *Davis v. GEO Grp. Corr., Inc.*, No. CIV-16-462, 2023 WL 2536727, at *1 (W.D. Okla. Mar. 16, 2023) (citing *Summers v. State of Utah*, 927 F.2d 1165, 1167-68 (10th Cir. 1991)).

## ANALYSIS

### I. Plaintiff's Objections [Dkt. No. 62] are Overruled.

Plaintiff alleges the City's delayed approval of the final plat violated its due process rights under the Fourteenth Amendment of the United States Constitution and Article II, Section 7 of the Oklahoma Constitution. But the Magistrate Judge recommends granting the City's Motion for Summary Judgment because (1) Plaintiff lacked a property interest protected by the Fourteenth Amendment and (2) the Oklahoma Governmental Torts Claims Act ("OGTCA") immunizes the City from Plaintiff's state law claims. Dkt. No. 61. Although Plaintiff objects to those recommendations, the Court agrees that the City is entitled to summary judgment.

#### A. Plaintiff's Fourteenth Amendment Claim

"The Fourteenth Amendment proscribes a state from, among other things, depriving a party of 'property without due process of law.' " *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000) (quoting U.S. Const. amend. XIV, § 1). "Procedural due process

ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision." *Id.* To prevail under either due process theory, "a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest." *Id.*

To establish a protected property interest, Plaintiff must have a "legitimate claim of entitlement" to some benefit. *Id.* (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Such entitlements "are created and their dimensions are defined by existing rules and understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983)). "In municipal land use regulation cases such as this, the entitlement analysis presents a question of law and focuses on 'whether there is discretion in the defendants to deny a zoning or other application filed by the plaintiffs.'" *Id.* (quoting *Norton v. Village of Corrales*, 103 F.3d 928, 931–32 (10th Cir. 1996)). So, if the City's approval of the final plat was a non-discretionary, ministerial act, then Plaintiff would have a protected property interest. In contrast, if the City's approval was discretionary, then the City's "decisionmaking lack[ed] sufficient substantive limitations to invoke due process guarantees." *Id.* (quoting *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence,* 927 F.2d 1111, 1116 (10th Cir. 1991).

The Magistrate Judge concluded that Plaintiff did not have a protected property interest because the City's approval was discretionary. In doing so, the Magistrate Judge relied on an Oklahoma Supreme Court case named *Kelly v. City of Bethany*, which analyzed whether 11 Okla. Stat. § 423 (1971) made a municipality's approval of a plat ministerial or discretionary. 588 P.2d 567, 568 (Okla. 1978). That statute provided that:

> All plans, plats, or replats of land laid out in lots or plats, and the streets, alleys or other portions of the same, intended to be dedicated to public or private use, within the corporate limits of any city or town, [s]hall first be submitted to the City Planning Commission for its approval or rejection, and [b]efore such plans, [p]lats or replats [s]hall be entitled to record in the office of the county clerk [t]hey must be approved by the legislative body of said city or town.
>
> It shall be unlawful to receive or record any such plan, plat or replat in any public office unless the same shall bear thereon, by indorsement, or otherwise, the approval of the legislative body of said city of town. The disapproval of any such plan, plat or replat by the legislative body of said city or town shall be deemed a refusal of the proposed dedication shown thereon.

*Id.* The Oklahoma Supreme Court interpreted this last sentence as creating "a dichotomy." *Id.* at 572. On one hand, if the city finds that an applicant has satisfied the city's zoning and platting requirements, then approval of the plat for recordation purposes is ministerial. *Id.* at 571-572. But, when approval of a plat functions as an acceptance of the plat's dedications, that decision is discretionary because it obligates the city to maintain those dedications. *Id.*

Section 423 was repealed and replaced by the Oklahoma Legislature on July 1, 1978. *See Kelly*, 588 P.2d at 569 n. 3. The successor to § 423 is 11 Okla. Stat. § 41-106, which provides similar discretionary language that *Kelly* analyzed:

> Before any plan, plat or replat of land within the corporate limits of a municipality shall be entitled to record in the office of the county clerk, it must be approved by the municipal governing body. No plan, plat or replat may be received or recorded in any public office unless the same shall bear thereon, by endorsement or otherwise, the approval of the municipal governing body. The disapproval of any plan, plat or replat by the municipal governing body shall be deemed a refusal of any proposed dedication shown thereon.

11 Okla. Stat. § 41-106. So, *Kelly*'s distinction between ministerial and discretionary acceptance remains. *See Boevers v. City of Piedmont, Oklahoma*, No. 14-CV-1048, 2015 WL 13189666, at *7 (W.D. Okla. Sept. 3, 2015) (applying *Kelly* to 11 Okla. Stat. § 41-106).

Coweta City Code § 13-4-4(D) contains nearly identical language provided in 11 Okla. Stat. § 41-106. But it also contains a "public works improvements" carve out:

> The City Council shall act upon the final plat for approval and for acceptance of public ways and service and utility easements and land dedicated to public use. *Approval of the final plat shall in no way be construed as acceptance of the public works improvements*. The disapproval of any plat or plan by the City Council shall be deemed a refusal of the proposed dedication shown thereon.

Coweta, Okla. Mun. Code § 13-4-4(D) (2011) (emphasis added). Based on this carve out, Plaintiff argued that approval of plat is separate from acceptance of "public works improvements." In support, Plaintiff also cited Coweta City Code § 13-7-7(A), which required the City to "formally accept, by resolution or ordinance, any or all improvements before such improvements become public property." Coweta, Okla. Mun. Code § 13-7-7(A) (2011).[1] And, seemingly consistent with § 13-7-7(A), the City passed a separate resolution accepting "paving, grading, sanitary sewer and drainage improvement and all required easements" in the final plat "as public infrastructure" immediately after the City voted to approve the final plat. *See* Dkt. No. 45-14 at 7-8; Dkt. No. 54-1 at 1. Accordingly, Plaintiff contended that the City's approval of the final plat did not include acceptance of "public works improvements." Therefore, according to Plaintiff, the plat approval was ministerial under *Kelly*.

The Magistrate Judge rejected this argument. In doing so, the Magistrate Judge concluded that the "public works improvements" provision "addresses only the acceptance of constructed

---

[1] The full text of § 13-7-7(A) provides that:

> The City Council shall formally accept, by resolution or ordinance, any or all improvements before such improvements become public property, provided that all statements and agreements specified above have been received and that as-built construction plans have been submitted. The two-year maintenance bond shall begin with the approval by the City Council, and the approval of the as-built plans shall not be construed to mean that the maintenance bond is void. No building construction shall be permitted on any lot to or on which improvements have not been completed in accordance with the provisions of this title, and no municipal utility service will be furnished to such lot.

Coweta, Okla. Mun. Code § 13-7-7(A) (2011).

infrastructure—streets, drainage, and similar improvements—as public property; it says nothing about the separate dedications of rights-of-way, easements, and public ways that a plat also conveys." Dkt. No. 61 at 8. In other words, the City's "ordinance-based distinction . . . addresses only Coweta's additional procedural safeguard for public-works infrastructure, not the discretion the City independently retains under state law over the rights-of-way and easement dedications conveyed on the Phase III plat's face." *Id.* at 8-9. And, "a municipality's adoption of an additional, discretionary safeguard for accepting constructed improvements [does not] strip[ ] it of the independently discretionary authority *Kelly* recognizes over dedication acceptance generally." *Id.* at 9. Finally, noting that the approved plat dedicated rights-of-way, easements, and public ways to the City, the Magistrate Judge concluded that approval of the plat was a discretionary, legislative act because approving the plat "necessarily entailed a decision [on] whether to accept those dedications and assume perpetual responsibility for them." Dkt. No. 61 at 7.

In its Objections, Plaintiff argues the R&R "misses the reason why *Kelly* held that the acceptance of dedications is discretionary. It is 'to protect [local governments] from having someone impose upon them the responsibility for maintenance and repair of streets.' " Dkt. No. 62 at 10-11 (quoting *Kelly*, 588 P.2d at 571). Thus, "'maintenance and repair' obligations pertain to the 'public works improvements' mentioned in the Coweta Subdivision Regulations—the 'constructed infrastructure', as the R&R puts it. Acceptance of a plat in Coweta explicitly does not accept those obligations." *Id.* at 11.

Plaintiff does not address the crux of the Magistrate Judge's conclusion—"public works improvements" are "separate [from] dedications of rights-of-way, easements, and public ways that a plat also conveys." Dkt. No. 61 at 8. True, acceptance of public improvements and dedications could both require the City to perform maintenance and repairs. But that does not mean that the

mechanism for accepting those obligations is the same for both. To accept *dedications*, the City has adopted the same discretionary language provided in 11 Okla. Stat. § 41-106 and construed in *Kelly*. The City Code's separate provisions may provide an additional step to accept *public works improvements*, but Plaintiff cites no authority suggesting that additional safeguard removes the City's discretionary authority to accept dedications. So, Plaintiff's Objections are overruled, and the City is entitled to summary judgment on Plaintiff's Fourteenth Amendment claim.

**B. Plaintiff's Claim(s) Under Article II, Section 7 of the Oklahoma Constitution**

The Magistrate Judge also determined that the OGTCA immunized the City from Plaintiff's claim(s) arising under Article II, Section 7 of the Oklahoma Constitution. Relevant here, 51 Okla. Stat. §§ 155(1) and 155(5) immunizes a state political subdivision from liability for a loss or claim resulting from the subdivision's "[l]egislative functions" or "[p]erformance of or the failure to exercise or perform any action or service which is in the discretion of the political subdivision." Dkt. No. 61 at 13-15. Relying again on *Kelly*, the Magistrate Judge determined that these "Legislative and Discretionary-Function Exemptions" immunized the City because acceptance of the plat necessarily entailed the legislative, discretionary acceptance of dedicated rights-of-ways, easements, and public ways. *Id.* at 15.

In its Objections, Plaintiff reasserts the same argument that "*Kelly* is inapplicable to the Coweta Subdivision Regulations due to their unique language." Dkt. No. 62 at 12. However, that argument is unpersuasive as discussed earlier. Accordingly, the Court agrees with the Magistrate Judge that §§ 155(1) and 155(5) immunizes the City from Plaintiff's claim(s) under Article II,

Section 7 of the Oklahoma Constitution.[2] So, the City is entitled to summary judgment on all of Plaintiff's claims.

**II. The City's Objection [Dkt. No. 63] is Sustained.**

Finally, the Magistrate Judge recommended dismissing Plaintiff's federal and state claims *without* prejudice. Dkt. No. 61 at 19-20. However, the City argues dismissal should be *with* prejudice because the R&R resolves all of Plaintiff's claims on their merits. Dkt. No. 63 at 5-6. The Court agrees with the City, as "[a] grant of summary judgment resolves the issue on the merits and thus is with prejudice." *Wheeler v. Hurdman*, 825 F.2d 257, 259 n. 5 (10th Cir. 1987); *see also Tippett v. United States*, 108 F.3d 1194, 1199 (10th Cir. 1997) (affirming dismissal of claims with prejudice based on discretionary function exception to the Federal Torts Claims Act). Accordingly, the Court sustains the City's Objection and dismisses Plaintiff's claims with prejudice.

**CONCLUSION**

IT IS THEREFORE ORDERED that the Magistrate Judge's R&R [Dkt. No. 61] is ADOPTED IN PART. Plaintiff's Objections [Dkt. No. 62] are OVERRULED, and the Court adopts the portion of the R&R recommending that the City's Motion for Summary Judgment [Dkt. No. 45] be granted. However, the Court SUSTAINS the City's Objection [Dkt. No. 63] and finds that Plaintiff's claims should be DISMISSED WITH PREJUDICE.

Dated this 19th day of October, 2026.

JOHN F. HEIL, III
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] The Magistrate Judge also examined the application of 51 Okla. Stat. § 155(12), 51 Okla. Stat. § 155(13), and 51 Okla. Stat. § 153(A). Although Plaintiff objects to the Magistrate Judge's analysis of § 155(12) and § 153(A), the Court need not analyze those objections because it can independently find that the City is immune under 51 Okla. Stat. §§ 155(1) and 155(5). In the alternative, the Court would adopt the Magistrate Judge's analysis of those other provisions.